UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT EVANS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-181-PPS |
| WHITE, et al., | |
| Defendants. | |

OPINION AND ORDER

Robert Evans, a prisoner without a lawyer, is proceeding in this case on three claims. First, he is proceeding against Administrative Assistant Sharon Garrison, Investigations and Intelligence Analyst ("I&I Analyst") Brittney White, and I&I Analyst Joseph Takacs "in their personal capacity for monetary damages for allegedly confiscating his mail in September 2021, November 2021, and July 2022 without a valid justification[.]" ECF 28 at 8. Second, he is proceeding against I&I Analysts White and Takacs "in their personal capacity for monetary damages for allegedly confiscating his mail in July 2022 in retaliation for his having filed this lawsuit[.]" *Id.* Third, he is proceeding against Grievance Specialist Joshua Wallen "in his personal capacity for damages for denying him an adequate opportunity to object to the confiscation of his mail[.]" ECF 49 at 3. All defendants now seek summary judgment. ECF 110.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the

evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

*First Amendment confiscation-of-mail claim*

Prisoners have an interest protected by the First Amendment in their incoming and outgoing mail. *Van den Bosch v. Raemisch*, 658 F.3d 778, 785–786 (7th Cir. 2011); *see also Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). A court must consider two factors when deciding whether the withholding of an inmate's mail violates the First Amendment. *Koutnik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006). "First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Id*. (citation omitted). Such interests include "security, order, and rehabilitation." *Id*. (citation omitted); *see also Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989) (observing that "[d]angerous outgoing correspondence" includes "escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion"). Second, the challenged action "must be no greater than is necessary or essential to the protection of that interest." *Koutnik*, 456 F.3d at 784 (citation and internal quotation marks omitted); *see also Rios v. Lane*, 812 F.2d 1032, 1037 (7th Cir.

2

USDC IN/ND case 3:22-cv-00181-PPS    document 129    filed 09/16/24    page 3 of 12

1987) ("The more difficult task however, is not in identifying an important governmental interest at stake, rather it is in determining whether the enforcement of [the rule] was no greater an infringement upon [the plaintiff's] first amendment liberties than [was] necessary to protect the state's interest.").

Indiana State Prison has a policy in place allowing for incarcerated individuals to contact and correspond with non-incarcerated individuals. ECF 35-1. Specifically, Policy No. 02-01-103, entitled "Correspondence," allows inmates at ISP to send unlimited mail unless limiting the mail is necessary to protect public safety or facility order and security. *Id.* at 4. Moreover, the policy disallows mail that is written in code or includes symbols. *Id.* The policy specifically prohibits correspondences that: (1) depict or describe procedures for the construction of weapons; (2) depict or describe procedures for brewing alcoholic beverages or the manufacture of drugs; (3) depict violence; and (4) encourage or instruct in the commission of criminal activity. *Id.* at 24. Additionally, the IDOC "Disciplinary Code for Adult Offenders" prohibits the possession of electronic materials which includes the unauthorized alteration, use, possession, or accessing of social media, including Facebook. ECF 35-3 at 7; ECF 110-3 at 5.

Pursuant to the Correspondence policy, an inmate's outgoing and incoming emails are monitored and inspected for prohibited communications. ECF 35-1 at 11-12, 28-29. If ISP staff withholds an email, they must notify the inmate within two working days and the inmate may submit a grievance to challenge the decision to withhold the email. *Id.* at 17. If the email is found to be legitimately withheld, it will be disposed of. *Id.* at 27-28.

3

The defendants argue summary judgment is warranted in their favor because the Correspondence policy is constitutional and they properly implemented the policy by withholding each of Evans' three emails. ECF 111 at 11-21. In his response, Evans does not dispute that the IDOC regulations at issue in this case are constitutional. ECF 121 at 9. Instead, he argues the defendants unreasonably applied the regulations when they withheld his emails, as his correspondence was not withheld in furtherance of any legitimate penological interest. *Id.* at 9-12.

Three emails are at issue in this case, and I will address each in turn. In the first email, which Evans attempted to send to Melissa Wilson on June 16, 2021, Evans wrote:

> So I just got this message. 5 days after u sent it. My pentagrams in my armpits do have the goat head, and the runes around it. I do like cutting with my knife. The blood is sooo nice to see . . . .
>
> I was smashed last night. Man, do I love drinkin thease days. I hook my tablet up to my tv, then I jam the fuck out to my music all night. Everybody knos when im drinkin, my tv is turned up nd with my homemade speaker I can blast my shit through the whole block. My speaker is made frm magnets, wire paper nd cardboard. Oo I also have a 2' tall weed plant I made for my cell.  It sits on the shelf. It looks real as fuck.[1]

ECF 45-1 at 2. The email was flagged by Administrative Assistant Garrison for "safety and security" reasons. *Id.* Evans filed Grievance 132499, arguing the email was improperly withheld. *Id.* at 5. In investigating the grievance, Grievance Specialist Wallen emailed Administrative Assistant Garrison and I&I Analyst White for an explanation as to why the email was withheld. *Id.* at 18-21. I&I Analyst White explained the email was withheld because Evans was claiming he was cutting himself with a

---

[1] This email has been condensed to include only the relevant portions. The full email is available on the docket.

4

knife, which violates the safety and security of the facility due to him promoting self-harm and obtaining a weapon. *Id.* at 18. Grievance Specialist Wallen then denied Grievance 132499, explaining to Evans that the email was likely withheld because it "violated policy by describing an issue that could jeopardize the safety and security of the facility: you possessing a knife and self-harming. After reviewing the message, I concur that the language and topics are inappropriate." *Id.* at 3. Evans appealed Grievance Specialist Wallen's decision to the warden and the Department Grievance Manager, and both his appeals were denied. *Id.*

Evans argues this email did not violate IDOC policy because he never stated he possessed a knife or intended to harm anyone. ECF 121 at 10-11. But that's simply untrue. Evans specifically stated in his email that he likes "cutting with my knife" and seeing the "blood." ECF 45-1 at 2. The defendants could have reasonably determined this statement implied Evans possessed a knife and was suggesting he would inflict violence on himself or another person, which threatens their legitimate interest in maintaining the safety and security of the prison facility. Additionally, this email potentially violated IDOC policy because Evans discussed his consumption of alcohol and a marijuana plant he'd built for his cell, which implicates the prison's legitimate concerns in prisoner safety and rehabilitation. Accordingly, the undisputed facts show the defendants properly applied IDOC policy by withholding this email and their enforcement of the rule was not a greater infringement upon Evans' First Amendment rights than was necessary to protect their legitimate interests in safety, security, and rehabilitation.

5

In the second email, an individual named Jean King attempted to send to Evans the following note on July 19, 2022:

> Feel like I have been neglecting you of late. Hope all is going well for you right now. I hear you are cookin up something for JDs birthday. I can't imagine what this year after last years bunch of dicks. lol Some days I just miss him so much. This is one of those days. Wish his ESPN as he calls is was working and I'd get a surprise call. My roomie is at the pool. Nice and quiet at least.
>
> I know you keep track of my gummy bears and other activities. I ordered this today. I forgot to show JD. maybe you can show it to him. There was just something about it that really pulled me to it. What do you think?

ECF 75-2. The email attached a picture of a glass pipe. *Id.* This email was flagged by I&I Analyst Takacs for "obscene material" reasons. ECF 35-5 at 13; ECF 110-4 at 6. Evans filed Grievance 144191, arguing the email was improperly withheld. ECF 35-5 at 11. In investigating the grievance, Grievance Specialist Wallen emailed I&I Analysts White and Takacs for an explanation as to why the email was withheld, and was informed by I&I Analyst Takacs that the email was withheld because it contained "a picture of drug paraphernalia that looks like a glass phallus." *Id.* at 13. After obtaining and reviewing a copy of the email, Grievance Specialist Wallen denied Grievance 144191, concluding the email was properly withheld. *Id.* at 1. Evans appealed Grievance Specialist Wallen's decision to the warden and the Department Grievance Manager, and both his appeals were denied. *Id.*

Evans argues this email did not violate IDOC policy because there was no reference to drug paraphernalia in the email and the photograph merely showed a picture of a pipe used for smoking tobacco. ECF 121 at 10-11. But the defendants could

6

have reasonably determined the photograph of this pipe, in connection with King's assertion that Evans (a convicted methamphetamine dealer) was "cookin up something for JD's birthday," contained a veiled reference to drug paraphernalia and encouraged the commission of criminal activity. Accordingly, the undisputed facts show the defendants properly applied IDOC policy by withholding this email and their enforcement of the rule was not a greater infringement upon Evans' First Amendment rights than was necessary to protect their legitimate interest in prisoner rehabilitation.

In the third email, which Evans attempted to send to Michael Freed on July 20, 2022, Evans wrote:

> I am glad that u have made so much progress in the week u have been out. The job will help u soo much. Now u just don't have lots of time just sitting around. Did u ever have the time to check out my fb? A lot of tat work ive done around Lafayette. Well bro send me some pics when u get the time! Ur # is on my fone list now too. So I can call u. Didnt call last night cuz u said u was gonna b on some personal time. Lol love n miss ya!!
>
> Pride&Power…(o)(o) 😊

ECF 75-1. This email was flagged by I&I Analyst Takacs for "discussing unauthorized social media account" reasons. ECF 75-1. I&I Analyst Takacs also attests that "Pride&Power" is a known slogan used in reference to a Security Threat Group in the prison. ECF 110-4 at 7. Evans filed Grievance 143772, arguing the grievance was improperly withheld. *Id.* at 11. In investigating the grievance, Grievance Specialist Wallen emailed I&I Analyst White for an explanation as to why the email was withheld, and I&I Analyst White responded the email violated policy by indicating an active social media account used by Evans. *Id.* at 12-13. Grievance Specialist Wallen denied

7

Grievance 143772, finding Evans' email was properly withheld because it contained "a reference to a social media site you are using which is unauthorized for offenders." *Id.* at 1. Evans appealed Grievance Specialist Wallen's decision to the warden and the Department Grievance Manager, and both his appeals were denied. *Id.*

Evans argues this email did not violate IDOC policy because it merely referenced a Facebook account he had prior to his incarceration. ECF 121 at 10-12. But the defendants could have reasonably determined this email's reference to Evans' Facebook account raised security concerns by implying that Evans was actively managing a Facebook account. Moreover, Evans does not dispute the defendants' alternative contention that his signature in this email stating "Pride&Power" was a reference to a Security Threat Group in the prison, which subjected the email to being revoked on safety and security grounds because it encouraged activity that could lead to physical violence, group disruption, or a violation of the Security Threat Group rules. *See* ECF 110-4 at 7; ECF 111 at 17-18; *Koutnik*, 456 F.3d at 785 (the determination whether correspondence contains gang-related symbolism "is an assessment that prison staff is uniquely suited to make," and the court should "defer to the staff's assessment" that correspondence contains gang symbols.). Accordingly, the undisputed facts show the defendants properly applied IDOC policy by withholding this email and their enforcement of the rule was not a greater infringement upon Evans' First Amendment rights than was necessary to protect their legitimate interest in protecting the safety and security of the facility.

Accordingly, because the undisputed facts show the defendants properly applied IDOC policy by withholding each of the three emails at issue in this case and their enforcement of the rule was not a greater infringement upon Evans' First Amendment rights than was necessary to protect their legitimate governmental interests, no reasonable jury could conclude the defendants violated Evans' First Amendment rights by withholding the emails. Summary judgment is therefore warranted in favor of the defendants on this claim.

*First Amendment retaliation claim*

Evans is proceeding against I&I Analysts White and Takacs "for allegedly confiscating his mail in July 2022 in retaliation for his having filed this lawsuit[.]" ECF 28 at 8. To prevail on a First Amendment retaliation claim, Evans must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To show causation, Evans must show "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotations omitted). Once Evans makes this showing, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). If the defendants carry this burden, the plaintiff may still reach trial by showing that the defendant's reasons were merely pretextual. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009).

The defendants argue summary judgment is warranted in their favor because they (a) never acted with any retaliatory motive and (b) would have withheld the emails regardless of any bad motive because they violated IDOC policy. ECF 111 at 13-16, 18-19. In his response, Evans argues that, because his emails did not violate IDOC policy and were not withheld for a legitimate penological reason, it should be inferred the defendants acted with a retaliatory motive. ECF 121 at 7. But as discussed above, I find the defendants properly enforced IDOC policy by withholding the emails and had legitimate penological reasons for withholding the emails. Therefore, there's no evidence in the record by which any reasonable jury could conclude the defendants withheld Evans' emails to punish him in retaliation for his protected First Amendment activity. Moreover, even if Evans had shown a retaliatory motive, the defendants have provided undisputed evidence they would have withheld the emails regardless of any bad motive because the emails violated IDOC policy, and Evans has not shown these reasons were merely pretextual. Accordingly, because there's no evidence Evans' protected First Amendment activity of filing this lawsuit was "a motivating factor" in the defendants' decision to withhold his emails, summary judgment is warranted in favor of the defendants on this claim.

### *Fourteenth Amendment claim against Grievance Specialist Wallen*

Evans is proceeding against Grievance Specialist Wallen "for damages for denying him an adequate opportunity to object to the confiscation of his mail[.]" ECF 49 at 3. "Due process requires that the decision to censor inmate mail must be accompanied by minimum procedural safeguards." *Miller v. Downey*, 915 F.3d 460, 465–

466 (7th Cir. 2019) (citations omitted). "This standard has generally required officials to provide inmates with notice and an opportunity to object to a confiscation of their mail." *Id*.

Here, it's undisputed Evans was able to submit grievances objecting to the confiscation of his emails, his grievances were considered and denied on the merits by Grievance Specialist Wallen, and he was able to appeal Grievance Specialist Wallen's decisions to the warden and Department Grievance Manager. In his response, Evans argues Grievance Specialist Wallen violated his due process rights by allowing I&I Analysts White and Takacs to "conduct" the investigations into his grievances. ECF 121 at 13-14. He cites *Procunier v. Martinez*, 416 U.S. 396 (1974), for the proposition that an inmate's grievances about censorship must be referred to a prison official other than the person who originally disapproved the correspondence. *Id.* at 13. But the undisputed evidence shows it was Grievance Specialist Wallen, not I&I Analysts White and Takacs, who conducted the investigations into Evans' grievances. Specifically, while Grievance Specialist Wallen asked I&I Analysts White and Takacs for an explanation as to why they withheld Evans' emails, it's undisputed he then independently reviewed the emails to determine whether their justifications were valid. The fact that Grievance Specialist Wallen requested information from the individuals who disapproved the emails does not show any due process violation. *See* ECF 110-2 at 8 ("Any staff person directly involved in the situation giving rise to an offender's complaint or grievance shall not participate in the investigation or resolution of the complaint or grievance *other than to provide necessary information during the investigation*") (emphasis added).

11

Because it's undisputed that Evans' grievances were properly investigated by Grievance Specialist Wallen, and Evans was allowed to appeal Grievance Specialist Wallen's decisions to the warden and the Department Grievance Manager, no reasonable jury could conclude Grievance Specialist Wallen denied Evans an adequate opportunity to object to the confiscation of his emails. Summary judgment is therefore warranted in favor of Grievance Specialist Wallen.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 110); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Robert Evans and to CLOSE this case.

ENTERED: September 16, 2024.

     /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT